## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BENNY MARTIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-19-128-RAW-SPS |
| ) | |
| COMMISSIONER of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Benny Martin requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]"  *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1]  Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty-three years old at the time of the administrative hearing (Tr. 110). He completed high school and some college, and has no past relevant work (Tr. 29, 237). The claimant alleges that he has been unable to work since March 17, 2017, due to blood pressure, broken back and multiple surgeries, anxiety, and depression (Tr. 236).

## Procedural History

On March 21, 2017, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His application was denied. ALJ Luke Liter held an administrative hearing and determined that the claimant was not disabled in a written opinion dated July 25, 2018 (Tr. 16-30). The Appeals Council denied review; thus, the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but with the nonexertional limitations to understanding, remembering, and carrying out simple and some complex tasks, and only interacting with coworkers, supervisors, and the general public on a superficial basis (Tr. 24). The ALJ concluded that although the claimant had no past relevant work to return to, he was nevertheless not

-3-

disabled because there was work he could perform, *i. e.*, hand packager, laundry worker, and stocker (Tr. 30).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly characterize his age,[2] (ii) failing to properly evaluate the opinion of consultative examiner Dr. Bailey Runkles as to his nonsevere physical impairments, (iii) failing to properly account for his severe mental impairments, and (iv) failing to find that his physical impairments of degenerative disc disease and chronic back pain were severe. The claimant also contends as part of his second argument that the ALJ erred by failing to allow him to submit records from a prior disability application for which he was awarded benefits. The undersigned Magistrate Judge agrees with the claimant's second and third contentions, and the decision of the Commissioner should therefore be reversed and the case remanded for further proceedings.

The ALJ found that the claimant had the severe impairments of major depressive disorder and panic disorder with agoraphobia, but that his previously broken back and hypertension were nonsevere (Tr. 18-19). Back in 2007, the claimant had been diagnosed with failed back surgery syndrome, post laminectomy syndrome, chronic back pain, hypertension, gait abnormality with a broad based gait, and left foot drop to some extent

---

[2] The undersigned Magistrate Judge notes that although the ALJ correctly stated at the administrative hearing and in his opinion that the claimant was 52 years old at the time of application, he nevertheless stated that the claimant was a "younger individual age 18-49" (Tr. 29). This appears to be a scrivener's error. Because the undersigned Magistrate Judge finds the case should be reversed and remanded on other grounds, this error can likewise be corrected on remand.

(Tr. 318). A November 2014 CT of the cervical spine revealed spondylosis and multilevel degenerative disc disease (Tr. 511). This was repeated in 2015, when treatment notes reflect the claimant had paraspinal lumbar TTP with decreased range of motion and a diagnosis of a failed laminectomy, degenerative disc disease of the lumbar spine, depression, and anxiety (Tr. 419). A June 2015 CT of the abdomen and pelvis revealed, *inter alia*, degenerative and postoperative changes of the lumbar spine (Tr. 525). On July 1, 2015, the claimant was referred for evaluation of his electronic spinal nerve stimulator, which noted diagnoses of degeneration of lumbar or lumbosacral intervertebral disc, radiculitis, and hypertension (Tr. 436).

The claimant was incarcerated during part of 2016 and 2017, and he received medical treatment during that time. Treatment notes during that time reflect the claimant went through a detoxification process in April 2016, at which time he was noted to have a normal gait and range of motion, but he complained of tactile disturbances in his feet due to his history of back injury (Tr. 368). The rest of the medical record from the Oklahoma Department of Corrections indicates treatment for the claimant's anxiety and hypertension, but no treatment related to the claimant's back (Tr. 328-373).

On May 18, 2017, Dr Bailey Runkles conducted a physical examination of the claimant (Tr. 374-382). Dr. Runkles examined the claimant and assessed him with chronic low back pain (including weakness in the lower extremities bilaterally), degenerative disc disease in the cervical spine, hypertension, depression, and anxiety (Tr. 376). Dr. Runkles noted that the claimant moved about the room with an unstable gait with slow speed and instability, and that he required the use of a cane to ambulate due to his lumbar spine

-5-

(Tr. 376).  Dr. Runkles also notes that the claimant had a decreased range of the cervical spine and of motion of the back extension and flexion, as well as of the neck extension and flexion, and in his shoulders (Tr. 377-378, 380).  She indicated that the claimant's lumbosacral spine was positive for pain upon movement, that he had weak heel/toe walking, and that he had positive bilateral straight leg raise tests (Tr. 380).

On May 23, 2017, Dr. Terry Efird, Ph.D., conducted a mental diagnostic evaluation of the claimant (Tr. 386-390).  Dr Efird assessed the claimant with major depressive disorder, moderate, as well as panic disorder with agoraphobia (Tr. 388).  Dr. Efird did not assess the claimant's reported previous treatment for anxiety, but he noted that the claimant could perform basic cognitive tasks for basic work-like activities, that he had no problems with persistence, and that he appeared capable of performing basic work tasks within a reasonable time frame (Tr. 389).

Upon review of the records, Dr. Suzanne Roberts recommended that the claimant's case be referred to an investigator, noting there was a "marked contrast" between the claimant's history of back injury and surgery, and the treatment records from the department of corrections (Tr. 385).  On June 1, 2017, two investigators visited the claimant at his brother's house where he was staying (Tr. 396).  They interviewed the claimant outside the home for about half an hour while all parties present were standing (Tr. 398).  The report states that the claimant "neither verbalized nor displayed any indication of pain or discomfort," and that he walked without an assistive device (Tr. 398). They stated that he demonstrated full and normal range of motion of all extremities and joints, as well as adequate an normal fine and gross manipulations of both hands (and grip

strength), because he occasionally gestured with both arms and hands, and that his gait was normal and he stood during the entire interview (Tr. 398). During the course of the conversation, the claimant told the investigators that he had walked thirty-two miles on the day of his release from incarceration, and that he did it nonstop and it took him six hours (Tr. 397-398).

Two state reviewing physicians determined that the claimant's physical impairments were nonsevere (Tr. 131, 143). As to his mental impairments, the state reviewing physicians found that the claimant could perform simple and some complex types of work, work with others on a superficial work basis, and adapt to a work situation (Tr. 136, 149).

Medical records submitted to the Appeals Council included treatment records from 2003 through 2014 and indicate, *inter alia*, that the claimant had a right leg limp and decreased range of motion of the right knee (Tr. 76). The claimant was also positive for chronic back pain in the lower lumbar spine that worsened with movement (Tr. 89, 91, 93). A lumbar spine x-ray from December 2010 revealed spondylolysis at L5 causing grade 2 spondylolisthesis of S5 on S1, significant facet arthropathy changes at L5-S1, and degenerative disk disease at L5-S1 (Tr. 103). The records also note the presence of the claimant's spinal stimulator, including replacement of leads in December 2011 (Tr. 80).

At the administrative hearing, the claimant's representative requested that the ALJ admit additional records from the claimant's previous disability claim file, which the ALJ declined to do, finding them unnecessary, excessive, and irrelevant, and that the present record properly provided a longitudinal view of the claimant's impairments (Tr. 16, 113).

At the hearing, the claimant testified that he could walk fifty yards "at the most" (Tr. 114). When asked about his report to the investigators that he had walked thirty-two miles in one day, he likened it to "telling an old fishing story . . . just filling them full of bologna and stuff" (Tr. 115). When asked why he lied, he reiterated that he was just telling a "fishing story" and "bragging" (Tr. 115-116).

In his written opinion at step two, the ALJ summarized the evidence related to the claimant's impairments, including Dr. Runkles's evaluation of the claimant related to his physical impairments and the interview conducted by the investigators (Tr. 18-22). Finding that the claimant had not been truthful with investigators, the ALJ found that the claimant had no severe physical impairment despite the objective findings documented in Dr. Runkles's report (Tr. 22). The ALJ acknowledged Dr. Runkles's findings related to reductions in range of motion, but pointed out that there were no additional sensory, focal, or neurological deficits, and noted that the claimant demonstrated "full range of motion" by standing and moving his hands while talking with the investigators (Tr. 22). At step four, the ALJ summarized the claimant's hearing testimony, as well as the DOC treatment notes related to his mental health, and the fact that the claimant was well dressed, well nourished, and appeared in no acute distress when he saw Dr. Runkles (Tr. 25-27). The ALJ then summarized Dr. Efird's report (Tr. 27). The ALJ contrasted the claimant's reported inability to afford treatment with evidence that he sought emergency care for a sinus infection (Tr. 28). The ALJ afforded Dr. Efird's opinion significant weight, and great weight to the opinions of the state reviewing physicians with regard to the claimant's mental impairments (Tr. 28). He provided no assessment of Dr. Runkles's opinion.

The claimant asserts that the ALJ erred in formulating his RFC as to his anxiety and depression, and the undersigned Magistrate Judge agrees. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003).

As an initial matter, the undersigned Magistrate Judge notes that although the ALJ *did* include the limitations of understanding, remembering, and carrying out simple and some complex tasks, and interacting with coworkers, supervisors, and the general public on a superficial work basis, neither the ALJ nor the state agency psychologists linked any evidence in the record to show how such limitations account for the claimant's severe mental impairments of major depressive disorder and panic disorder with agoraphobia. *See also Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five."); *Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work."). Instead, the ALJ

should have explained why the claimant's severe impairments did not call for corresponding limitations in the RFC. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir 1984).

Moreover, the ALJ failed to properly assess the combined effect of all the claimant's impairments – both severe and nonsevere – in assessing his RFC.  Because the ALJ did find that the claimant had a severe impairment, any failure to find the claimant's additional impairments severe at step two is considered harmless error because the ALJ would nevertheless be required to consider the effect of these impairments and account for them in formulating the claimant's RFC at step four.  *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two].  Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004), *quoting* 20 C.F.R. § 404.1523.  *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those

he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted].  But here the error *was not* harmless, because although the ALJ mentioned each impairment at step two, the ALJ entirely failed to consider the "cumulative effect of claimant's impairments," at step four.  This is particularly significant where, as here, the treatment notes and Dr. Runkles's report specifically documented range of motion limitations, among others, that should have been at least considered in formulating the RFC, if not also actually reflected in the RFC.  *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F2d 382, 385-386 (7th Cir. 1984).

This indicates an additional error regarding the ALJ's evaluation of Dr. Runkles's opinion as a consultative examiner.  "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion."  *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995).  Those factors are:  (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or

not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart,* 350 F.3d 1297, 1300-1301 (10th Cir. 2003), *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Here, as described above, the ALJ did not even address the opinion at step four, rejecting any discussion of the claimant's nonsevere physical impairments at step four, further engaging in improper picking and choosing. *See Hardman*, 362 F.3d at 681 ("It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.").[3]

Essentially, the ALJ devoted much of his discussion at step four to questioning his determination at step two, *i. e.*, the severity of the listed impairments. *See also*, 289 Fed. Appx. at 292 ("But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. This was an improper assessment where, as here, the ALJ appeared to devote much of his time at step four to pointing out the inconsistencies in the record rather than determining the claimant's RFC. *Drapeau*, 255 F.3d at 1214 (A reviewing court is "'not in a position to draw factual

---

[3] The claimant also contends that the ALJ should have admitted the records from his previously-adjudicated award of disability benefits in 2008 because it contains the records from the insertion of his spinal stimulator and other back-related treatment. However, the ALJ was not required to admit them and the undersigned Magistrate Judge declines to find the ALJ's refusal to admit them was reversible error in this case.

conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991).  *See also Hardman*, 362 F.3d at 681 (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer*, 742 F.2d at 385-386 ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

Because the ALJ failed to properly assess the claimant's RFC, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis of *all* the evidence related to the claimant's impairments.  If such analysis on remand results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence.  Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith.  Any objections to this Report and Recommendation must be filed within fourteen days.  *See* Fed. R. Civ. P. 72(b).

**DATED** this 27th day of April, 2020.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**